UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PEDRO JULIO ROSARIO, | ) |
| Movant, | ) |
| v. | ) Civil No. 08-424-B-W |
| | ) Crim. No. 7-61-B-W |
| UNITED STATES OF AMERICA, | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

On March 3, 2008, Pedro Julio Rosario pled guilty under a plea agreement to a single cocaine base conspiracy count. As part of the plea agreement Rosario waived his right of appeal as to any sentence of imprisonment not in excess of 240 months. Rosario received a sentence of 76 months. Rosario has filed a 28 U.S.C. § 2255 motion pressing three skeletal grounds: one, he claims his attorney induced him to sign a plea agreement for an offense that he never committed as he maintains he never possessed or conspired to posses crack cocaine; two, his "lawyer did not represent [his] best interest in justice"; and three, when he asked his lawyer to appeal he was told that he could not appeal because he had waived his right to appeal. The United States has filed a memorandum opposing § 2255 relief. Rosario had until April 13, 2008, to file a reply and has not done so. I now recommend that the Court deny Rosario § 2255 relief.

**DISCUSSION**

All three of Rosario's claims involve an assertion of ineffective assistance of counsel. The First Circuit summarized the standard for 28 U.S.C. § 2255 ineffective assistance claims in United States v. De La Cruz:

The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In order to prevail, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from. In this case, Defendant has demonstrated neither.

Although the Supreme Court in Strickland discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. As the Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id

514 F.3d 121, 140 (1st Cir. 2008); accord Alfano v. United States, 592 F.Supp.2d 149, 154 -55 (D. Me. 2008). Rosario's three grounds all stem from his decision to plead guilty, and in United States v. Colon-Torres the First Circuit explained:

In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court applied Strickland 's two-part test to ineffective assistance of counsel claims in the guilty plea context. Id. at 58 ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the Hill Court explained, "[i]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 58-59.

382 F.3d 76, 85 -86 (1st Cir. 2004).

"When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir.1993)(citations omitted). "A district court may forego such a hearing when 'the movant's

allegations, even if true, do not entitle him to relief, or ... [when] the movant's allegations "need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." ' " Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting David v. United States, 134 F.3d 470, 477 (1st Cir.1998)); see also McGill, 11 F.3d at 225 ("In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations…") (citations omitted). Furthermore, when a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." Id.

**Rosario's Three 28 U.S.C. § 2255 Grounds**

*1.     Attorney's Advice to Sign the Plea Agreement*

In his first 28 U.S.C. § 2255 ground Rosario maintains that he did not understand the nature of the charge and the consequences of his guilty plea. He laments: "My lawyer induced me to sign a plea agreemen[t] for an offense that I never committed. I never possessed or conspired to possess[] crack cocaine." (Sec. 2255 Mot. at 5.)

"One of the important purposes of the searching inquiry required by Fed.R.Crim.P. 11 before a guilty plea can be accepted is the finality of litigation." Ouellette v. United States, 862 F.2d 371, 374 (1st Cir. 1988) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985) and United States v. Timmreck, 441 U.S. 780, 784 (1979)). To advance his claim Rosario "must present valid reasons why he should be relieved of his statements at a Rule 11 hearing in order to 'overcome the presumption of regularity which the record ... imports.'" Id. (quoting Walker v. Johnston, 312 U.S. 275, 286 (1941))(other citations omitted). "[T]he presumption of truthfulness of the

Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) (citing Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1984) and Hedman v. United States, 527 F.2d 20 (10th Cir.1975)).

The change of plea hearing transcript demonstrates that this Court thoroughly fulfilled its Rule 11 responsibilities at the hearing with Rosario, his attorney, Hilary Billings, and Assistant Unites States Attorney Joel Casey.[1]  (See R. 11 Tr. at 3-19, Crim. No. 07-61-B-W, Doc. No. 142.)  With respect to the possession of the crack cocaine count, the colloquy proceeded as follows:

> THE COURT: Now, Mr. Rosario, have you pleaded guilty to the charge contained in Count 1 of the superseding indictment because you are actually guilty and for no other reason?
> THE DEFENDANT: For no other -- for that's – for the only -- or the only one I'm facing.
> THE COURT: I'm sorry. Would you repeat that, ma'am?
> THE DEFENDANT: Could you please repeat the question? What was the question?
> THE COURT: Yes. The question is this -- and let me just tell you, Mr. Rosario, where I'm coming from. I can't accept your plea of guilty unless you're really guilty. Do you understand?
> THE DEFENDANT: Yes.
> THE COURT: So my ques --
> THE DEFENDANT: I understand.
> THE COURT: -- my question to you, sir, is this. Have you pleaded guilty because you are really guilty? Have you pleaded guilty because you are actually guilty and for no other reason?
> THE DEFENDANT: For no other reason, yes, that's right.
> THE COURT: Mr. Billings, are you satisfied your client has pleaded guilty because he is actually guilty?
> MR. BILLINGS: Completely.

---

[1] An interpreter was engaged.

> THE COURT: Mr. Rosario, have you received a copy of the superseding indictment in this case?
> THE DEFENDANT: Yes, sir.
> THE COURT: Has that superseding indictment been translated into Spanish for you?
> THE DEFENDANT: Yes, it was translated in Spanish, yes.
> THE COURT: I'm sorry. I didn't get that.
> THE DEFENDANT: Yes, it was translated into Spanish, yes.
> THE COURT: Thank you. Have you had enough time, Mr. Rosario, to discuss the charge with your lawyer?
> THE DEFENDANT: Yes, sir.
> THE COURT: Has Mr. Billings explained to you the elements and the nature of the offense charged?
> THE DEFENDANT: Yes, sir.
> THE COURT: Has he also told you about the penalties that can be imposed?
> THE DEFENDANT: Yes, sir.
> THE COURT: Mr. Billings, are you satisfied your client understands the charge contained in Count 1 of the superseding indictment and the penalties that can be imposed?
> MR. BILLINGS: Yes, I am, Your Honor.
> THE COURT: Now, Mr. Rosario, you are charged in a one-count superseding indictment. That indictment reads as follows: On about September 17, 2007, in the District of Maine, which means the state of Maine, and elsewhere, Defendants Pedro Julio Rosario, also known as Justino Soto, and Roberto Rodriguez knowingly and intentionally conspired with each other and persons known and unknown to commit offenses against the United States, namely, distribution and possession with the intent to distribute 50 grams or more of a mixture or substance containing cocaine base, a Schedule II controlled substance, in violation of federal law. Do you understand what is set forth in the superseding indictment?
> THE DEFENDANT: Yes, sir.

(Id. at 6-7.)  Further into the proceeding, the following exchange occurred:

> THE COURT: If I proceed to enter a judgment of guilty and sentence you on the basis of your guilty plea, and if all that happens, except for very limited circumstances, you will have no right of appeal from your conviction. Do you understand?
> THE DEFENDANT: Yes, sir.
> THE COURT: As a part of your pleading guilty, I must find there is a factual basis for your guilty plea, and to assure myself there is such a factual basis, I'll be asking you questions about the conduct that gave rise to this charge, and you must answer my questions truthfully. Do you understand?
> THE DEFENDANT: Yes.

THE COURT: In light of all that I've just explained to you, Mr. Rosario, do you still choose to plead guilty to the charge contained in Count 1 of the superseding indictment?
THE DEFENDANT: Yes, sir.
THE COURT: You may be seated. Mr. Casey, I have before me a government's version of the offense, which is dated March the 3, 2008. Does this government's version of the offense contain, at a minimum, the evidence that the government would bring to bear if the matter were to go to trial?[2]
MR. CASEY: It does, Your Honor.
THE COURT: Thank you. Mr. Billings, have you had an opportunity to review the government's version of the offense, which is dated March 3, 2008?
MR. BILLINGS: Yes, I have, Your Honor.
THE COURT: Are you satisfied the government can, in fact, produce the evidence that's set forth in the government's version of the offense?
MR. BILLINGS: Yes, I am.
THE COURT: Are you also satisfied, Mr. Billings, that the admissible part of that evidence would permit a properly instructed jury to determine beyond a reasonable doubt that your client is guilty of the crime to which he is pleading guilty?
MR. BILLINGS: Without question.
THE COURT: Mr. Rosario, would you stand, sir. Mr. Rosario, the government has filed a government's version of the offense, which sets forth the facts upon which they would rely if the matter went to trial. Have you had an opportunity to review the government's version of the offense, and has it been translated into Spanish for you?
THE DEFENDANT: Yes, sir.
THE COURT: Do you need any more time to review it?
THE DEFENDANT: No, sir.
THE COURT: Do you understand everything the government says it would prove?
THE DEFENDANT: Yes, sir.
THE COURT: I'm going to ask you a very, very important question, Mr. Rosario, and I need a truthful answer. Is there any respect with which you disagree with what is set forth in the government's version of the offense?
THE DEFENDANT: No, sir.
THE COURT: Is the information set forth in the government's version of the offense true to your own personal knowledge?
THE DEFENDANT: Yes, sir.
THE COURT: Based on my review of the government's version of the offense, the responses of your lawyer, and your own responses, Mr. Rosario, I find there is

---

[2] Rosario's prosecution version (Doc. No. 86 in the criminal case, 1:07-CR-061-JAW-1) describes Rosario's contact with a cooperating defendant, leading to a meeting that resulted in the apprehension of Rosario and co-defendant Roberto Rodriguez along with two "bricks" of cocaine base. Rosario's fingerprints were found on the "bricks."

> a factual basis for the guilty plea to the crime charged in Count 1 of the superseding indictment. The next part of this process, Mr. Rosario, is for me to make sure that you're doing what you're doing of your own free will.
> Has anyone threatened you or has anyone attempted to force you to get you in any way to plead guilty?
> THE DEFENDANT: No, sir.
> THE COURT: I understand there is a plea agreement between the government and the defendant. And, Mr. Billings, would you kindly show your client a copy of the plea agreement, turning to page 7 of that agreement.
> MR. BILLINGS: We've done so, Your Honor.
> THE COURT: Thank you. Mr. Rosario, I have before me an agreement between you and the government, and there is a signature above the signature line for Pedro Julio Rosario. Is that your signature?
> THE DEFENDANT: Yes, sir.
> THE COURT: Did you sign this agreement voluntarily?
> THE DEFENDANT: Yes, sir.
> THE COURT: Did you have it translated into Spanish for you before you signed it?
> THE DEFENDANT: Yes, sir.
> THE COURT: Did you understand everything in it before you signed it?
> THE DEFENDANT: Yes, sir.
> THE COURT: In signing the agreement, did you intend to agree to all its terms and conditions?
> THE DEFENDANT: Yes, sir.

(Id. at 11-14.)

There is no doubt from these excerpts and the prosecution version that Rosario represented to the Court that he was taking responsibility for the possession of crack base. Rosario has presented no evidence or explanation in support of a theory that counsel had somehow counseled or cajoled him into taking responsibility for the Count I conduct despite Rosario's protestations of innocence.  As in Butt, because Rosario has utterly failed "to reasonably substantiate his ineffective assistance of counsel claim with any material issues of fact, he has not 'overcome the presumption of regularity which the record ... imports,' " 731 F.2d at 80 (quoting Walker v. Johnston, 312 U.S. 275, 286 (1941)).

7

### 2.      *Attorney's Failure to Represent Rosario's Best Interests*

With regards to Rosario's second 28 U.S.C. § 2255 claim he states only: "My lawyer did not represent[] my best interest in justice." This wholly conclusory statement -- proffered without any explanation as to what his attorney did or did not do to protect Rosario's interests-- is manifestly "inadequate on its face," David, 134 F.3d at 477, and Ground 2 is subject to summary dismissal.

### 3.      *Attorney's Performance apropos Request to Appeal*

With respect to the final ground, Rosario insists that he asked his attorney to pursue an appeal and was told that he could not appeal because his commitment not to do so was part of the plea agreement.

Agreeing that Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000) requires that an attorney consult with his or her client about taking an appeal, the United States fairly frames the issue as being whether Rosario's attorney "violated Rosario's rights by declining to appeal because Rosario received a sentence that was lower than what the Government agreed to recommend and the appeal waiver provision of the plea agreement precluded an appeal." (Gov't Opp'n Mem. at 16.)

The First Circuit held in United States v. Teeter: "Given the general availability of waivers in criminal cases, the public policy gains to be reaped by allowing plea-agreement waivers of appellate rights, and the impressive body of precedent sanctioning such waivers, we hold that presentence waivers of appellate rights are valid in theory." 257 F.3d 14, 23 (1st Cir. 2001).[3] Teeter also set forth the criteria and conditions supporting valid waivers of appeal rights.

---

[3]      The Third Circuit summarized in United States v. Khattak:

Id. at 23-26.  "The baseline for any waiver of rights," the panel explained, "is that the defendant enter into it knowingly and voluntarily."  Id. at 24 (citing Town of Newton v. Rumery, 480 U.S. 386, 394 (1987)).  "In the plea-bargain context, the text of the plea agreement and the content of the change-of-plea colloquy are critically important to a determination of knowledge and volition."  Id. (citing United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir.1994)).  The Panel elaborated:

> We look first to confirm that the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope. Mindful that Rule 11(c)(6) specifically recognizes the importance of the change-of-plea hearing to any waiver of appellate rights, we next will examine the transcript of that hearing. The focus of this inquiry is to ascertain whether the court's interrogation suffices to ensure that the defendant freely and intelligently agreed to waive her right to appeal her forthcoming sentence.

Id.  (citations omitted).  The third condition in Teeter is that the enforcement of the waiver does not constitute a miscarriage of justice.  Id. at 25.

In sum, " appellate waivers are binding so long as: (1) the written plea agreement clearly delineates the scope of the waiver; (2) the district court inquired specifically at the plea hearing

---

As the Supreme Court has stated, "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Mezzanatto, 513 U.S. 196, 201 (1995); see also Peretz v. United States, 501 U.S. 923, 936  (1991) ("The most basic rights of criminal defendants are ... subject to waiver."). In every plea agreement, the defendant waives the right to a jury trial, the right to confront and cross-examine witnesses, and the right against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 243 (1969). In addition, a defendant can waive his rights against double jeopardy and his Sixth Amendment right to counsel. Ricketts v. Adamson, 483 U.S. 1, 10 (1987) (double jeopardy); Johnson v. Zerbst, 304 U.S. 458, 465 (1938) (right to counsel).
   The United States Constitution does not guarantee a right to appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). The right to appeal a criminal conviction is created by statute. See 18 U.S.C. § 3742. The ability to waive statutory rights, like those provided in 18 U.S.C. § 3742, logically flows from the ability to waive constitutional rights. [United States v.] Teeter, 257 F.3d [14] 22 [(1st Cir. 2001)]; see also Shutte v. Thompson, 82 U.S. (15 Wall.) 151, 21 L.Ed. 123 (1873) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit.").
 273 F.3d 557, 561 (3d Cir. 2001).

about any waiver of appellate rights; and (3) the denial of the right to appeal would not constitute a miscarriage of justice." United States v. Edelen, 539 F.3d 83, 85 (1st Cir. 2008)

The operative paragraph of the plea agreement in Rosario's case provides that Rosario waives the right to appeal the fact of his conviction for the offense and any "sentence of imprisonment that does not exceed 240 months." (Plea Agreement at 10.) It added that Rosario did not waive his right to appeal based on a right that has been newly recognized by the Supreme Court and made retroactive to cases on collateral review. (Id.) The plea agreement clearly delineated the scope of Rosario's waiver. See, e.g., Edelen, 539 F.3d at 86; United States v. Chandler, 534 F.3d 45, 49 (1st Cir. 2008). There is no question that Rosario signed the agreement.

The transcript of the plea colloquy refutes any argument that Rosario was not apprised of the implication that in signing the plea agreement he was waiving his right to appeal any sentence of 240 months or less:

> THE COURT: This goes on to say, on paragraph 4, that the defendant is aware that Title 18 United States Code Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, the defendant waives the right to appeal the following: First, your guilty plea and any other aspect of your conviction. I'm going to stop there for a second. I told you earlier that given the fact that you are entering a guilty plea, you only have a limited right to appeal or challenge your conviction. What this agreement does, however, is it eliminates even that limited right to appeal your guilty plea or conviction. Do you understand?
> THE DEFENDANT: Yes, sir.
> THE COURT: If it were not for this agreement, you would have a limited right to appeal your conviction and guilty plea -- or you might have. Do you understand?
> THE DEFENDANT: Yes, sir.
> THE COURT: This agreement goes on to say that you waive the right to appeal a sentence of imprisonment that does not exceed 240 months. What you should understand is that but for this agreement, Mr. Rosario, you would have the right to appeal any sentence that I impose. Do you understand?
> THE DEFENDANT: Yes, sir.

> THE COURT: And that appeal would go to a higher court of judges who would reveal -- who would review the legality of the sentence that I imposed. Do you understand?
> THE DEFENDANT: Yes, sir.
> THE COURT: As a consequence of this agreement, if I impose a sentence of 240 months, I will be the only judge, in effect, who will review the legality of the sentence. Do you understand?
> THE DEFENDANT: Yes, sir.

(R. 11 Tr. at 15-17.)   This exchange meets the second prong to the Teeter analysis. See, e.g., Edelen, 539 F.3d at 86; Chandler, 534 F.3d at 49-50.

With Rosario having received a 76-month sentence (164 month less than the threshold set in the plea agreement), this is surely not a case that raises the specter of a post-plea agreement miscarriage of justice.  The United States recommended a sentence of 76 months and the PSI recommended 108 months. Rosario reaped the benefit of a Government cooperation-based departure.  As it turned out Rosario was not "totally exposed to future vagaries"; there was nothing "harsh, unfair, or unforeseeable" in the sentence he received.  Teeter, 257 F.3d at 25.

Given this analysis and in view of Rosario's utter failure to provide a basis for questioning counsel's response to him vis-à-vis the operation of the appeal waiver, there is no reason to conclude that counsel performed below the Sixth Amendment standard in responding to Rosario's request to appeal by pointing out that he had waived the right as part of the plea agreement.

## *Conclusion*

For the reasons set forth above, I recommend that the Court deny Rosario 28 U.S.C. § 2255 relief.  I further recommend that a certificate of appealability should not issue in the event Rosario  files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 4, 2009                                              /s/Margaret J. Kravchuk
                                                         U.S. Magistrate Judge